**SHEREE D. WRIGHT (**AZ SBN# 035265)
IBF Law Group, PLLC
3101 N. Central Ave, Suite 1250
Phoenix, Arizona 85012
Telephone: (602) 833-1110
Facsimile: (602) 800-5701
E-Mail: sheree@ibflaw.com

**CORTNEY E. WALTERS** (*admitted pro hac vice*)
The Law Office of Cortney E. Walters, PLLC
2719 Hollywood Blvd., Suite A-1969
Hollywood, FL 33020
Telephone: (954) 874-8022
Facsimile: (954) 889-3747
E-Mail: cwalters@cewlawoffice.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jane Doe, | Case No.: 2:25-cv-01295-PHX-GMS |
| Plaintiff, | |
| vs. | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| Suns Legacy Partners, LLC, et al. | |
| Defendants, | **Hearing Date:** |
| | **Hearing Time:** |
| | **Assigned to the Hon. G. Murray Snow** |

**TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES TO BE DECIDED …………………….…………….……5

INTRODUCTION………………………………………………………………...5

FACTUAL BACKGROUND……………………………………………………….7

LEGAL STANDARD…………………………………………………………....10

ARGUMENTS ..……………………………………………………………....12

    I.    Count III States a Valid Claim Under 42 U.S.C. § 1981 and Should Not Be Dismissed……………………………………………………………..12

    II.    Plaintiff's Claims Under the ACRA and the Arizona Equal Pay Law Are Timely or, at Minimum, Not Subject to Dismissal at the Pleading Stage……………………………………………………….……15

        A. ACRA Claim (Count V)……………………………………..…....15

        B. Arizona Equal Pay Law Claim (Count VI)……………………….......16

    III.    Plaintiff States a Plausible Claim for Intentional Infliction of Emotional Distress…………………………………………………..…………17

        A. The Complaint Alleges Extreme and Outrageous Conduct………..……..17

        B. Plaintiff Has Adequately Alleged Intent or Recklessness……………......20

        C. Plaintiff Has Alleged Severe Emotional Distress…………………..……..20

CONCLUSION………………………………………………………..……....21

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Albino v. Baca*
    747 F.3d 1162, 1169 (9th Cir. 2014)……………………………………………..15
*Ashcroft v. Iqbal*
    556 U.S. 662, 678 (2009)………………………………………………6, 10, 17, 19
*Austin v. Univ. of Oregon*
    925 F.3d 1133, 1137 (9th Cir. 2019)……………………………………………..12
*Bell Atl. Corp. v. Twombly*
    550 U.S. 544, 570 (2007)…………………………………………………………10
*Cahill v. Liberty Mut. Ins. Co.*
    80 F.3d 336, 337–38 (9th Cir. 1996)……………………………………………..11
*Ford v. Revlon, Inc.*
    153 Ariz. 38, 45 (1987)………………………………………………………19, 20
*Green v. Brennan*
    578 U.S. 547, 555 (2016)…………………………………………………….13, 14
*Johnson v. City of Shelby*
    574 U.S. 10 at 11…………………………………………………………………14
*Johnson v. Riverside Healthcare Sys., LP*
    534 F.3d 1116, 1122 (9th Cir. 2008)……………………………………………..11
*Lindvall v. Law Office of Daniel Hutto PLLC,*
    2024 WL 4634082 (D. Ariz. Oct. 31, 2024)……………………………………..19
*Loos v. Lowe's*
    796 F. Supp. 2d 1013, 1023 (D. Ariz. 2011)……………………………………..19
*Maduka v. Sunrise Hosp.*
    375 F.3d 909, 912 (9th Cir. 2004)………………………………………………..11
*McIntyre v. Phx. Newspapers, Inc.,*
    2007 WL 9702526, at *3 (D. Ariz. May 24, 2007)………………………………15
*Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*
    905 P.2d 559, 563 (Ariz. Ct. App. 1995)………………………………………..19
*Pennsylvania State Police v. Suders*
    542 U.S. 129, 141 (2004)…………………………………………………..5, 13, 14
*Pizzo v. City of Chandler*
    2021 WL 7540814, at *3 (D. Ariz. Sept. 21, 2021)…………………………..12, 15
*Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi, P.C.*
    218 Ariz. 293, 297 (Ct. App. 2008)……………………………………………..16
*Scheuer v. Rhodes*
    416 U.S. 232, 236 (1974)…………………………………………………………10
*Spratt v. Northern Automotive Corp.*
    958 F. Supp. 456, 462 (D. Ariz. 1996)…………………………………………..19

*Swierkiewicz v. Sorema N.A*
     534 U.S. 506, 512 (2002)……………………………………………………11
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
     551 U.S. 308, 322 (2007)……………………………………………………16
*Usher v. City of Los Angeles*
     828 F.2d 556, 561 (9th Cir. 1987)………………………………………..12
*Watkins v. Arpaio*
     367 P.3d 72, 74–75 (Ariz. Ct. App. 2016)……………………………..…17, 20
*Wood v. Univ. Physicians Healthcare*
     2013 WL 6170604 at 4 (D. Ariz. Nov. 21, 2013)………………………………14

**Statutes**

A.R.S § 41-1481……………………………………………………………………15
42 U.S.C. § 1981……………………………………………………...….…*passim*
A.R.S. § 23-341………………………………………………………….5, 16

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)…………………………………………………..11, 21
Fed. R. Civ. P. 9(b)…………………………………………………..11, 20
Fed. R. Civ. P. 12(b)(6)………………………………………….…*passim*

Plaintiff, Jane Doe submits the following Memorandum of Points and Authorities in opposition to the Partial Motion to Dismiss filed by Defendant Suns Legacy Partners, L.L.C. ("Defendant").

**STATEMENT OF ISSUES TO BE DECIDED**

1.  Whether Plaintiff's constructive discharge claim is properly pled as an independent cause of action where the Complaint alleges intolerable working conditions, including quid pro quo sexual harassment, retaliatory discipline, exclusion from professional opportunities, and wage disparities, which meet the standard set forth in *Suders* and related Ninth Circuit case law.

2.  Whether Plaintiff's claim under the Arizona Civil Rights Act (ACRA) should be dismissed, where the Complaint alleges a timely charge of discrimination was filed with the Equal Employment Opportunity Commission (EEOC), which operates under a work-sharing agreement with the Arizona Civil Rights Division (ACRD), and where exhaustion is an affirmative defense not properly resolved at the pleading stage.

3.  Whether Plaintiff's Arizona Equal Pay Act claim is barred by the statute of limitations, where Plaintiff alleges ongoing disparate pay compared to a male predecessor for the same position, and the Complaint does not establish on its face that the claim is untimely under A.R.S. § 23-341(F).

4.  Whether Plaintiff's claim for Intentional Infliction of Emotional Distress (IIED) is sufficiently pled, where the Complaint details severe and repeated acts of workplace abuse, including coercive sexual advances by a superior and retaliatory suspension, which a jury could find to be extreme and outrageous conduct under Arizona law.

**INTRODUCTION**

- 5 -

Defendant's Motion opens with inflammatory rhetoric, accusing Plaintiff of drafting a Complaint "designed to grab headlines" and lacking factual support. Such language is inappropriate in a Rule 12(b)(6) motion, which requires the Court to accept well-pled allegations as true and to construe them in the light most favorable to the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather than applying the governing legal standards, Defendant's Motion appears more focused on undermining Plaintiff's credibility and casting aspersions on her counsels' competence, an approach consistent with Defendant's broader litigation posture.

Nonetheless, the Complaint is not a press release. It is a legally grounded pleading that sets forth detailed, factual allegations of unlawful conduct, corroborated in part by documentary evidence, contemporaneous communications, and witness accounts. Whether these facts are ultimately proven at trial is not the question at this stage.

Defendant's Motion to Dismiss misrepresents the nature of Plaintiff's claims, distorts the applicable legal standards, and relies on premature factual conclusions that are inappropriate at the pleading stage. Contrary to Defendant's assertions, Plaintiff does not assert an independent or freestanding claim for constructive discharge under 42 U.S.C. § 1981. Rather, as the Complaint makes clear, Plaintiff alleges constructive discharge as the adverse employment action stemming from Defendant's unlawful discrimination and retaliation on the basis of race and national origin—precisely as permitted under federal law. Defendant's attempt to recast the claim as improperly pleaded is a matter of semantics, not substance.

Defendant's challenges to the timeliness of Plaintiff's claims under the Arizona Civil Rights Act ("ACRA") and the Arizona Equal Pay Law similarly fail. Plaintiff has alleged that she timely filed an EEOC charge, which constitutes dual filing with the ACRD under

well-established precedent and a binding work-sharing agreement. Moreover, the Complaint plausibly alleges an ongoing pattern of unequal pay through the end of Plaintiff's employment, thereby triggering the rolling limitations period recognized by Arizona courts. Dismissal at this stage would require the Court to draw inferences against the nonmoving party and resolve factual disputes in Defendant's favor, which is impermissible under Rule 12.

Finally, Plaintiff's claim for intentional infliction of emotional distress ("IIED") is both legally cognizable and sufficiently supported by detailed factual allegations. Defendant's argument that Plaintiff has not alleged "extreme and outrageous" conduct disregards the cumulative and sustained nature of the misconduct described in the Complaint, which includes sexual harassment, gender- and race-based marginalization, and repeated retaliatory acts. These are not isolated or innocuous incidents, but a pattern of degrading and discriminatory treatment that ultimately forced Plaintiff out of a promising career. Whether Defendant's conduct meets the high bar for IIED is a fact-intensive question not properly resolved on a motion to dismiss.

Defendant's motion rests on a mischaracterization of Plaintiff's legal theories, a selective reading of the Complaint, and an improper invitation to resolve factual disputes on the pleadings. For the reasons that follow, the motion should be denied in its entirety.

## FACTUAL BACKGROUND

Plaintiff is a Hispanic woman who held a prominent leadership role within Defendant Suns Legacy Partners, LLC ("Defendant" or "Suns"). As alleged in the Complaint ("Compl."), she was the highest-ranking Hispanic employee in the corporate structure—one that employed only ten Hispanic individuals overall—and played a central

role in leading "The Campaign," a high-profile cultural initiative aimed at honoring the contributions of the Hispanic community to the Suns' brand (Compl. ¶¶ 11–14).

Over the course of more than two and a half years, Plaintiff led the planning, development, and execution of the Campaign. Despite assuming responsibilities equivalent to a director-level role, she was never formally promoted or compensated accordingly (Id. ¶¶ 23–24). Her efforts were neither acknowledged nor rewarded at the level of similarly situated male colleagues, including Shawn Martinez, who previously led a comparable campaign and was publicly recognized and better compensated (Id. ¶¶ 25–26, 53–54).

Beginning in mid-2023, Plaintiff endured a hostile work environment marked by unwelcome sexual advances and suggestive conduct from Kyle Pottinger, a senior executive (Id. ¶¶ 15, 18–20). Pottinger misused his authority by orchestrating meetings under professional pretenses to steer conversations toward personal matters and implied that a romantic or sexual relationship would facilitate Plaintiff's career advancement (Id. ¶¶ 18–20). After Plaintiff rebuffed his advances, she experienced a noticeable withdrawal of support from Pottinger and other senior executives (Id. ¶ 21). Despite having knowledge of Pottinger's misconduct, Defendant failed to investigate or impose any corrective measures (Id. ¶ 22).

The discrimination extended beyond harassment. Plaintiff was subjected to ongoing inequities in pay and denied promotional and public-facing opportunities routinely afforded to male and non-Hispanic employees (Id. ¶¶ 25–27, 41–42). Male colleagues openly undermined her leadership, and two Defendant agents engaged her in a demeaning conversation that involved the objectification of Hispanic women and compelled her to view a sexually inappropriate image (Id. ¶¶ 30–31). When Plaintiff reported the incident

to her supervisor, Graham Wincott, her concerns were dismissed and no action was taken (Id. ¶ 32).

In another meeting, a male colleague, Shawn Martinez, made overtly homophobic comments. When Plaintiff spoke up in support of the LGBTQIA community, Martinez questioned her sexuality and made inappropriate personal remarks (Id. ¶ 34). Wincott again failed to intervene, excusing the behavior as generational (Id. ¶ 35). These events compounded Plaintiff's isolation and emotional distress (Id. ¶ 36).

In response to these hostile and discriminatory conditions, Plaintiff began documenting her experiences in private voice messages to her fiancé. One such message— intended to remain private—was inadvertently sent to Wincott and resulted in formal discipline for being "unprofessional" (Id. ¶¶ 37–39). The Defendant did not address the substance of her concerns but instead escalated retaliatory conduct by disciplining her for a neutral and factual personal social media post highlighting her work on the Campaign (Id. ¶ 56).

On February 5, 2024, Plaintiff resigned her position, but not by choice. As she alleges, the cumulative effect of persistent harassment, retaliatory discipline, discriminatory exclusion, and emotional distress made it impossible for her to remain employed, thus constituting a constructive discharge (Id. ¶¶ 58–60). Her final request—to be publicly acknowledged for her leadership on the Campaign—was denied, even though male and non-Hispanic colleagues were later nominated for a Rocky Mountain Emmy based on the very work she had led (Id. ¶¶ 62–65).

Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC), which operates under a work-sharing agreement with

the Arizona Civil Rights Division, and brings claims under 42 U.S.C. § 1981, the Arizona Civil Rights Act, the Arizona Equal Pay Law, and Arizona common law (Id. ¶¶ 7–9).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal only where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face."[1] The Rule does not ask whether the plaintiff will ultimately prevail on the merits, but instead whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[2] At this early stage, the plaintiff is not required to prove her case, marshal evidence, or anticipate defenses. The purpose of Rule 12(b)(6) is to screen out legally baseless claims—not to test the sufficiency of the evidence before discovery has commenced.[3]

A claim has "facial plausibility" when the facts alleged permit the Court to reasonably infer that the defendant is liable for the alleged misconduct.[4] This is a context-specific inquiry that depends not on rigid formalism but on common sense and judicial experience. The Supreme Court has repeatedly emphasized that "plausibility" is not synonymous with "probability."[5] It simply requires more than speculation or conclusory assertions and enough factual content to nudge the claim "across the line from conceivable to plausible."[6]

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)
[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
[3] *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (complaint may proceed even if likelihood of success is remote).
[4] *Iqbal*, 556 U.S. at 678.
[5] Id.
[6] *Twombly*, 550 U.S. at 570.

In resolving a Rule 12(b)(6) motion, courts must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff.[7] This means that all reasonable inferences must be drawn in the non-movant's favor, and dismissal is improper unless the facts alleged clearly fail to support any plausible theory of liability. "Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle her to relief."[8]

Importantly, Rule 8(a)(2) governs most civil claims, including those sounding in discrimination, retaliation, equal pay, and intentional infliction of emotional distress. That rule requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."[9] Plaintiff need not plead a prima facie case or provide evidentiary support. The Supreme Court has explicitly rejected attempts to impose heightened pleading standards in discrimination and civil rights cases.[10]

By contrast, Rule 9(b)'s heightened pleading standard applies only to allegations of fraud or mistake. Plaintiff is not alleging fraud, and none of her claims—whether under 42 U.S.C. § 1981, the Arizona Civil Rights Act, the Arizona Equal Pay Law, or common law tort—trigger Rule 9(b). Defendant's arguments improperly conflate these pleading burdens by demanding evidence, heightened particularity, or rebuttal of hypothetical defenses at the motion to dismiss stage.

---

[7] *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).
[8] *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).
[9] Fed. R. Civ. P. 8(a)(2).
[10] *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *see also Maduka v. Sunrise Hosp.*, 375 F.3d 909, 912 (9th Cir. 2004) (Rule 8 applies to employment discrimination claims).

- 11 -

The Ninth Circuit and courts in the District of Arizona have consistently held that civil rights plaintiffs are not required to allege facts that eliminate every alternative inference or prove discriminatory animus outright at the pleading stage.[11] Here, the Complaint contains detailed factual allegations of discrimination, retaliation, and workplace misconduct—supported by specific events, dates, actors, and harms—dismissal under Rule 12(b)(6) is not appropriate.

Ultimately, a motion to dismiss is not a vehicle for challenging the truth of the allegations or assessing credibility. It is a gatekeeping mechanism designed to ensure that plaintiffs have met the threshold requirements of notice and plausibility. Plaintiff has done so here.

## ARGUMENTS

### I.    Count III States a Valid Claim Under 42 U.S.C. § 1981 and Should Not Be Dismissed

Defendant's argument for dismissal of Count III rests on the flawed premise that Plaintiff is asserting a freestanding cause of action for constructive discharge. That is incorrect. Plaintiff's third claim for relief, titled "Constructive Discharge (42 U.S.C. § 1981)," expressly incorporates all preceding allegations, including those establishing unlawful discrimination and retaliation under section 1981, and pleads that Plaintiff was forced to resign as a direct result of that conduct. See Complaint paragraphs ninety-three through one hundred six. This is not an independent tort claim. Rather, it is a properly

---

[11] S*ee*, e.g., *Austin v. Univ. of Oregon*, 925 F.3d 1133, 1137 (9th Cir. 2019); *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987); *Pizzo v. City of Chandler*, No. CV-20-02309-PHX-MTL, 2021 WL 7540814, at *3 (D. Ariz. Sept. 21, 2021).

pleaded theory of constructive discharge as the adverse employment action component of Plaintiff's race and national origin discrimination and retaliation claims under section 1981.

Courts have long recognized that constructive discharge is a viable basis for establishing an adverse employment action under federal anti-discrimination statutes. See *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004) (constructive discharge occurs when a reasonable person in the employee's position would feel forced to resign due to intolerable working conditions); *Green v. Brennan*, 578 U.S. 547, 555 (2016). Plaintiff has alleged precisely that here. Paragraph seventy-five of the Complaint alleges that Plaintiff "was forced to resign her position" as a direct result of Defendant's discriminatory conduct. Paragraph eighty-nine alleges that Plaintiff "was forced to resign from her position due to the intolerable working conditions created by the ongoing harassment, discrimination, and retaliation," including coerced interactions with a superior (Compl. ¶¶ 18–21), forced exposure to sexually explicit material (Compl. ¶¶ 31–32), retaliatory discipline for social media activity (Compl. ¶¶ 41, 100), and exclusion from public-facing roles (Compl. ¶¶ 40–42, 78–79). Count III then reiterates and expands on these facts to provide a clear and detailed account of the intolerable environment that culminated in Plaintiff's involuntary resignation.

This structure is legally proper and factually sound. Plaintiff has not asserted constructive discharge as a standalone tort, nor has she attempted to create a new or unauthorized legal theory. Instead, she has set forth constructive discharge as the ultimate adverse employment action that completed Defendant's discriminatory and retaliatory course of conduct. Courts routinely permit such claims to be pleaded in this manner under

section 1981 and related statutes. See Suders, 542 U.S. at 141; see also Green, 578 U.S. at 555.

Defendant's reliance on inapposite case law does not alter this analysis. The decisions cited by Defendant merely confirm that constructive discharge is not an independent tort claim under state law. See, for example, *Wood v. Univ. Physicians Healthcare*, 2013 WL 6170604 at 4 (D. Ariz. Nov. 21, 2013). But Plaintiff does not assert a common law tort. She clearly grounds Count III in section 1981 and identifies constructive discharge as the result of her employer's unlawful discrimination and retaliation. That is precisely how constructive discharge is meant to operate in the federal civil rights context.

At most, Defendant's objection is one of form rather than substance. Even if the Court were to find that Plaintiff's constructive discharge allegations could have been placed solely within Counts I and II, such a preference would concern formatting and not legal sufficiency. It is well established that federal courts do not dismiss claims simply because the legal theory is imperfectly captioned. See *Johnson v. City of Shelby*, 574 U.S. 10 at 11 (federal pleading rules do not authorize dismissal for imperfect statement of the legal theory). Plaintiff's third claim for relief gives Defendant full notice of the nature, basis, and factual underpinnings of her constructive discharge theory and how it relates to her section 1981 claims. That satisfies the pleading requirements of Federal Rule of Civil Procedure 8.

In short, Plaintiff's Count III is neither duplicative nor improper. It does not assert an unauthorized or freestanding cause of action. It simply and properly sets forth the manner in which Defendant's discriminatory and retaliatory conduct forced Plaintiff to resign, conduct which, under well-established federal law, constitutes an adverse

employment action in violation of section 1981. Defendant's motion to dismiss Count III should therefore be denied in its entirety.

## II.    Plaintiff's Claims Under the ACRA and the Arizona Equal Pay Law Are Timely or, at Minimum, Not Subject to Dismissal at the Pleading Stage

### A.    <u>ACRA Claim (Count V)</u>

Under Arizona Revised Statutes § 41-1481, a charge of discrimination must be filed with the Arizona Civil Rights Division within 180 days of the alleged unlawful employment practice. Defendant argues that Plaintiff failed to exhaust this requirement, yet that conclusion rests on silence and not on any admission by Plaintiff that no charge was filed. To the contrary, the Complaint states that Plaintiff initiated proceedings before the Equal Employment Opportunity Commission ("EEOC"), which operates in tandem with the Arizona Civil Rights Division ("ACRD") under a work-sharing agreement. (Compl. ¶ 9.) Under that agreement, a timely charge filed with the EEOC is deemed a dual filing with the ACRD for purposes of exhaustion.

Courts in this District routinely recognize that EEOC charges, when cross-filed, satisfy the ACRA's administrative prerequisites. See *Pizzo v. City of Chandler*, No. CV-20-02309-PHX-MTL, 2021 WL 7540814, at *6 (D. Ariz. Sept. 21, 2021); *McIntyre v. Phx. Newspapers, Inc.,* No. CV-06-02903-PHX-JAT, 2007 WL 9702526, at *3 (D. Ariz. May 24, 2007).

Moreover, Plaintiff is not required to plead exhaustion affirmatively. The Ninth Circuit has made clear that administrative exhaustion is an affirmative defense, not a pleading requirement. *See Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). Therefore, dismissal on this ground is inappropriate unless it is apparent from the face of the Complaint that exhaustion could not have occurred. Defendant fails to meet that standard.

In any event, Defendant miscalculates the 180-day deadline. The alleged constructive discharge occurred on or around February 5, 2024. Plaintiff alleges that she initiated her administrative charge before filing suit on April 18, 2025, and is awaiting issuance of her Right to Sue letter from the EEOC. That strongly supports the inference that the charge was filed within the statutory period—particularly under Rule 12, where the Court must draw all reasonable inferences in Plaintiff's favor. See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Dismissal of Plaintiff's ACRA claim is not warranted on the current record.

### B. <u>Arizona Equal Pay Law Claim (Count VI)</u>

Defendant next argues that Plaintiff's claim under A.R.S. § 23-341 is barred by the six-month limitations period set forth in subsection (F). That argument again assumes that the last alleged unequal pay practice occurred on February 5, 2024, but Plaintiff has alleged a course of unequal pay that persisted throughout her employment. (Compl. ¶ 121.) Because the Arizona Equal Pay Law adopts a rolling limitations period akin to the federal Lilly Ledbetter Fair Pay Act, a new violation occurs each time a discriminatory paycheck is issued. See *Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi, P.C.,* 218 Ariz. 293, 297 (Ct. App. 2008) (holding that the limitations period begins to run when the employee is "last affected by the discriminatory compensation decision").

Thus, if Plaintiff received unequal pay on a biweekly basis through February 5, 2024 and likely beyond as one does not receive their final paycheck the last day they work, she would have until approximately the end of August 2024, to initiate her claim. The statute merely requires that any action be instituted within six months of the last alleged violation. Plaintiff is not required to affirmatively plead the precise pay stub or pay date that supports her claim. The Complaint plausibly alleges that the violation persisted through the end of

her employment and beyond. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plausibility standard under Rule 12).

At minimum, this is a fact-intensive inquiry not suitable for resolution at the pleading stage. Plaintiff is entitled to conduct discovery regarding the dates and structure of her compensation and to demonstrate that her claims fall within the limitations period.

In summary, Plaintiff's claims under the ACRA and the Arizona Equal Pay Law are not subject to dismissal. Defendant's arguments rely on premature factual conclusions, misapplications of law, and improper inferences drawn against the nonmoving party. The motion should be denied as to Counts V and VI.

## III.    Plaintiff States a Plausible Claim for Intentional Infliction of Emotional Distress

Defendant's contention that Plaintiff's IIED claim fails as a matter of law ignores the applicable pleading standards and mischaracterizes both the facts alleged and the governing legal framework. While Arizona courts recognize that IIED is a narrowly circumscribed tort, they do not categorically foreclose such claims in the employment context, especially where, as here, the Plaintiff alleges a prolonged, targeted campaign of discriminatory, retaliatory, and degrading conduct.

At the motion to dismiss stage, Plaintiff need only allege facts that, if true, plausibly support the conclusion that Defendant's conduct was extreme and outrageous, that it was undertaken intentionally or with reckless disregard of the near-certainty of emotional harm, and that Plaintiff suffered severe emotional distress as a result. See *Watkins v. Arpaio*, 367 P.3d 72, 74–75 (Ariz. Ct. App. 2016).

### A. The Complaint Alleges Extreme and Outrageous Conduct

Defendant isolates select allegations and artificially minimizes their context and cumulative effect. When considered in their totality, the facts alleged in the Complaint support the plausible inference that Defendant's conduct was sufficiently outrageous to sustain an IIED claim.

Plaintiff alleges that a male colleague made repeated sexual advances and career-based insinuations, including the suggestion that a romantic or sexual relationship could influence her advancement, and that when rebuffed, Plaintiff experienced material retaliation in the form of reduced professional support and exclusion from core functions (Compl. ¶¶ 18–21). Two male colleagues, on a single but egregious occasion, forced Plaintiff to view sexually explicit material and pressured her to comment on it in a professional setting (¶¶ 31–32). Defendant failed to investigate this incident despite Plaintiff reporting it to management, creating a workplace culture of impunity (¶ 33).

Defendant issued disproportionate and public reprimands for minor alleged infractions, such as social media activity, while non-Hispanic male employees engaged in comparable or more visible conduct without discipline (¶¶ 41, 84, 100). Plaintiff was systematically denied public visibility, recognition, and media opportunities provided to similarly situated non-Hispanic male colleagues, despite equivalent or superior work (¶¶ 40–42). Plaintiff was subjected to a prolonged pattern of microaggressions, disparate treatment, and institutional retaliation that ultimately led to constructive discharge (¶¶ 125–128).

These allegations, viewed together, describe not a single insensitive comment or trivial slight, but a sustained and coordinated pattern of discriminatory and retaliatory conduct which includes sexual harassment, cultural exclusion, targeted discipline, and denial of opportunity—all occurring within the confines of Plaintiff's workplace and

resulting in her forced resignation. This is not a case of workplace friction or isolated incivility. The Complaint describes prolonged psychological abuse, leveraging race, sex, and organizational hierarchy to isolate, discipline, and ultimately force Plaintiff from her position. Courts recognize that outrageousness may arise from a course of conduct rather than a single incident. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 45 (1987). In *Ford*, the Arizona Supreme Court sustained an IIED claim where an employer failed to respond meaningfully to sexual harassment complaints, thereby compounding the harm. Here, Defendant not only failed to intervene, it perpetuated the discrimination through formal discipline and public marginalization.

Moreover, the cases Defendant cites are materially distinguishable. In *Loos v. Lowe's*, for example, the plaintiff alleged isolated incidents of inappropriate language. 796 F. Supp. 2d 1013, 1023 (D. Ariz. 2011). In *Spratt*, the allegations concerned internal justification for termination and not gender-based sexual harassment, ethnic marginalization, or cumulative retaliation. 958 F. Supp. 456, 462 (D. Ariz. 1996). And in *Lindvall*, the conduct, while degrading, was limited to a few episodes related to pregnancy bias. Here, Plaintiff alleges continuous mistreatment involving multiple actors, management indifference, and repeated psychological injury.

The question of whether conduct is "so outrageous… as to go beyond all possible bounds of decency" is typically reserved for the jury unless no reasonable minds could differ. *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995). At the motion to dismiss stage, the Court must accept Plaintiff's allegations as true and draw all reasonable inferences in her favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendant's contrary characterization of the conduct improperly asks the Court to resolve disputed factual inferences in its favor.

### B. **Plaintiff Has Adequately Alleged Intent or Recklessness**

Defendant's argument that Plaintiff fails to allege intent or recklessness ignores settled Ninth Circuit and Arizona law. While intent is a required element, it may be alleged generally and inferred from conduct. Fed. R. Civ. P. 9(b); *Watkins*, 367 P.3d at 74–75. Plaintiff explicitly alleges that Defendant either intended to cause emotional distress or acted with reckless disregard for the near-certainty that such distress would occur (Compl. ¶ 130). Courts routinely uphold IIED claims at the pleading stage where plaintiffs allege a consistent pattern of conduct from which intent or recklessness may reasonably be inferred. See *Ford*, 153 Ariz. at 45.

Here, the Complaint alleges that Defendant repeatedly engaged in conduct—sexualized coercion, exclusionary practices, selective discipline, and indifference to explicit reports of misconduct—that would foreseeably and inevitably cause harm to any reasonable employee. The fact that Defendant persisted in this conduct despite Plaintiff's internal reports and observable distress supports a strong inference of recklessness, if not intent.

### C. **Plaintiff Has Alleged Severe Emotional Distress**

Plaintiff alleges that she suffered emotional trauma, humiliation, anxiety, and psychological injury severe enough to compel her resignation from a career she loved and excelled in (Compl. ¶¶ 128–130). These allegations are more than sufficient at the pleading stage. See *Watkins*, 367 P.3d at 74–75 (noting that severity is a fact-intensive issue typically not suitable for resolution on the pleadings).

Plaintiff has adequately pled facts that, taken as true, describe extreme and outrageous conduct committed intentionally or recklessly, and resulting in severe emotional distress. Defendant's motion to dismiss the IIED claim should be denied.

**CONCLUSION**

Plaintiff's Complaint sets forth plausible and properly grounded claims that arise from a pattern of discriminatory, retaliatory, and emotionally injurious conduct that culminated in her constructive discharge. Defendant's motion ignores the controlling standards at the Rule 12(b)(6) stage, misapplies the relevant case law, and seeks dismissal based on premature factual disputes and misreadings of the pleadings. Each of the challenged counts, Count III under § 1981, Counts V and VI under the ACRA and Arizona Equal Pay Law, and Count VII for intentional infliction of emotional distress, survives scrutiny under Rule 8 and governing precedent. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Partial Motion to Dismiss in its entirety.

**DATED** this 12th day of June 2025.

        Respectfully Submitted,

        **IBF LAW GROUP, PLLC**

        By: /s/ Sheree D. Wright
            Sheree D. Wright
            3101 N. Central Ave, Suite 1250
            Phoenix, Arizona 85012
            Telephone: (602) 833-1110
            E-Mail: sheree@ibflaw.com

        **THE LAW OFFICE OF CORTNEY E. WALTERS, PLLC**

        By: /s/ Cortney E. Walters
            Cortney E. Walters
            2719 Hollywood Blvd., Suite A-1969
            Hollywood, FL 33020
            Telephone: (954) 874-8022
            E-Mail: cwalters@cewlawoffice.com

        *Attorneys for Plaintiff*