**SHEREE D. WRIGHT (**AZ SBN# 035265)
IBF Law Group, PLLC
3101 N. Central Ave, Suite 1250
Phoenix, Arizona 85012
Telephone: (602) 833-1110
Facsimile: (602) 878-3294
E-Mail: sheree@ibflaw.com

**CORTNEY E. WALTERS** (*pro hac vice*)
The Law Office of Cortney E. Walters, PLLC
2719 Hollywood Blvd., Suite A-1969
Hollywood, FL 33020
Telephone: (954) 874-8022
Facsimile: (954) 889-3747
E-Mail: cwalters@cewlawoffice.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chelsea Montes, | |
| Plaintiff, | |
| vs. | Case No.: CV-25-01295-PHX-GMS |
| Suns Legacy Partners, L.L.C., | |
| Defendant, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS** |
| | **(HON. G. MURRAY SNOW)** |

*This brief exceeds the 17-page limit set by LRCiv 7.2(e) and is conditionally submitted pending the Court's ruling on Plaintiff's concurrently filed Motion for Leave to Exceed Page Limits.*

Plaintiff, Chelsea Montes, responds to Defendant's (Suns Legacy Partners, L.L.C.'s) Motion for Sanctions as follows:

## **PRELIMINARY STATEMENT**

First and foremost, Plaintiff's counsel, Sheree D. Wright and Cortney Walters, accept full responsibility for the inadvertent filing of unfinalized versions of Document 21 (Reply in Support of Motion to Proceed Anonymously) and citation/quotation errors in Documents 1, 20, 21, and 26. We apologize to the Court and Defendant for any confusion. Upon identifying the errors, counsel conducted a full review and promptly filed a Motion for Leave to Amend and a Notice of Errata to ensure the record reflects only verified legal authority.

## **INTRODUCTION**

Rule 11 sanctions are not only improper and unwarranted but also procedurally flawed in ways that violate both the Federal Rules of Civil Procedure and the Local Rules of this Court. The motion appears to serve only one purpose and that is to harass Plaintiff and unnecessarily increase the cost of litigation. Accordingly, Plaintiff respectfully requests that the motion be denied in its entirety. Furthermore, Defendant's motion is a smear campaign disguised as a Rule 11 filing. Rule 11 requires that the identical motion be served and then filed only after the twenty-one-day safe harbor expires. Defendant violated this mandate. What it served on July 30, 2025, was 123 pages; what it filed on August 26 ballooned to 220 pages—with new arguments, exhibits, and harsher rhetoric. This was not the same motion. Defendant further flouted Rule 11(c)(2) by injecting sanctions rhetoric into prior filings before the safe harbor period had even begun.

The Ninth Circuit has made clear that this requirement is not optional. In *Radcliffe v. Rainbow Construction Co.*, 254 F.3d 772, 789 (9th Cir. 2001), the court explained that the service requirement gives the opposing party an opportunity to withdraw the challenged filing, and failure to comply with that requirement precludes the imposition of sanctions. Likewise, in *Barber v. Miller*, 146 F.3d 707, 710–11 (9th Cir. 1998), the Ninth Circuit held that service and filing are distinct steps and that a Rule 11 motion may be filed only after service and the 21-day safe harbor has elapsed, with noncompliance barring sanctions. Defendant disregarded these requirements. The motion therefore fails at the threshold and should be denied in its entirety, with irrelevant and prejudicial exhibits stricken and Plaintiff awarded her reasonable fees.

## **BACKGROUND**

After service, Defendant did not file the same Rule 11 motion. **(Exhibit A-B)**. Instead, it materially altered and expanded it by shifting its legal theories, introducing new authorities, and repackaging its accusations. **(Exhibit A-B)**. The filed version (Doc. 49) includes new legal theories and arguments and more than 200 pages of attachments, far exceeding the 123-page version served on July 30, 2025. It adds new docket references (Docs. 36, 37, 38, and 39) and cites cases not included in the served version.[1]

---

[1] *Hamilton v. Yavapai Cmty. Coll. Dist.,* No. CV-12-08193-PCT-GMS, 2018 WL 6696906, at *1-2 (D. Ariz. Dec. 20, 2018), and *Mavy v. Comm'r of Soc. Sec. Admin.,* No. CV-25-00689-PHX-KML (ASB), 2025 WL 2355222, at *6-9 (D. Ariz. Aug. 14, 2025)

Defendant's own comparison chart confirms the shift. **(Exhibit A-B)**. Citations labeled "**case does not exist**" in the served version, were recast in the filed motion as "**case does not exist as cited,**" conceding that the authorities exist but pivoting to a new argument based on misquotation. This is not a clerical correction; it is a substantive shift in legal theory. The motion also includes irrelevant and inflammatory exhibits, such as unrelated disciplinary materials (Exhibits 1 through 5) and private email communications (Exhibits 6 through 9). These materials have no relevance to Rule 11's narrow inquiry and serve no legitimate purpose under the Rule. Their inclusion appears calculated to prejudice the Court and disparage Plaintiff's counsel, Mrs. Wright, by insinuating, without evidence or factual basis, that she has engaged in prior misconduct involving fabrication, misrepresentation, or dishonesty before a tribunal. That implication is categorically false. Plaintiff's counsel has never engaged in any form of professional misconduct of misrepresentation or false statement to any tribunal. These materials serve no legitimate Rule 11 purpose and appear intended to prejudice the Court and disparage Plaintiff's counsel. Although Defendant opens its motion by claiming it does "not bring this Motion lightly," the record and tone of its filing suggest otherwise.

Upon reviewing the July 30, 2025, motion for sanctions, Mrs. Wright promptly realized that an incorrect draft of Plaintiff's Reply in Support of Motion to Proceed Anonymously had been inadvertently filed by a former member of her team, Karen Angulo. Ms. Wright immediately notified the entire team, and they began working diligently and collaboratively to correct the oversight. On June 11, 2025, Mrs. Wright had circulated the final draft intended for filing to her team, which included Ms. Walters and two law clerks who are pending bar exam

4

Filed conditionally pending Court approval of Motion to Exceed Page Limits.

results, Divine Holmes and Karen Angulo. **(Exhibit C).** While Ms. Angulo had prepared the initial version of Document 21, Mrs. Wright had provided a finalized draft to be filed. However, without the team's knowledge, Ms. Angulo filed an earlier version instead. This went unnoticed until Defendant served its Rule 11 motion on July 30, 2025. **(Exhibit A-B).** After that, the team reviewed the version history, confirmed the June 11, 2025, draft was the operative version, and immediately began correcting the record. These actions demonstrate good-faith efforts to rectify an inadvertent filing mistake—not any bad-faith conduct. **[See Exhibit D, "Cortney Walters Declaration"]**

Beyond the filings, Defendant has also engaged in a coordinated media campaign aimed at discrediting Plaintiff's counsel. In public statements and online content, Defendant has falsely suggested that Mrs. Wright fabricated claims to extort the organization. These baseless public accusations mirror the insinuations made in their Rule 11 motion. This demonstrates that the filing is not an isolated legal response but part of the same ongoing smear campaign, now disguised as a sanctions motion in order to appear legitimate. **[*See* Exhibit E "Sheree Wright's Declaration"]**

Furthermore, the timing reveals the strategy. The day after this Rule 11 motion was filed, a separate action by minority owners against Defendant became public in the Delaware Court of Chancery concerning access to internal records.[2] In that matter, Defendant declined to comment.

---

[2] *Kisco WC Sports II LLC and Kent Circle Investments LLC v. Suns Legacy Holdings LLC*, filed August 21, 2025, but became public August 27, 2025.

Here, by contrast, Defendant repeatedly attacks counsel publicly. **(Exhibit E)**. This Rule 11 filing appears calculated to target counsel rather than the merits and it aligns with Defendant's broader litigation and media strategy, not any legitimate Rule 11 concern. They used this opportunity to further embarrass Plaintiff's counsel in hopes that the public would be distracted by this Motion and not the lawsuit that dominated the media. **[*See* Exhibit E "Sheree Wright's Declaration"]**

## LEGAL STANDARD

Rule 11 provides in relevant part:

> **(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>     . . .
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; ....

This standard does not require a finding of subjective bad faith but instead evaluates the conduct against that of a competent attorney practicing before the court. The Ninth Circuit has emphasized that Rule 11 sanctions are an "extraordinary remedy" to be exercised with caution, and courts have significant discretion in determining whether to impose them. In *Greenberg* v. *Sala*, 822 F.2d 882 (9th Cir. 1987), the Ninth Circuit applied an objective reasonableness standard to determine whether sanctions under Rule 11 were appropriate. The court held that sanctions are warranted only if a filing is frivolous, meaning no competent attorney could believe it was well-grounded in fact and law. The court found that the complaint in question, while containing factual errors, was not frivolous because it was based on sufficient inquiry.

Where counsel corrects errors, sanctions are inappropriate. Furthermore, district court has "broad, but not limitless" power to impose sanctions in appropriate cases. *Mendez* v. *County of San Bernardino*, 540 F.3d 1109, 1131 (9th Cir. 2008). When sanctions are sought under the court's inherent powers, a finding of "bad faith" is required, which "sets a high threshold." Id. at 1132 (internal quotes and cites omitted). In fact, "[e]ven in a case where the district court described a litigant's arguments as 'totally frivolous,' 'outrageous' and 'inexcusable' and called his behavior 'appall[ing],' [the Ninth Circuit] nonetheless refused to equate this characterization of conduct as synonymous with a finding of bad faith." *Id*. (quoting *Primus Auto. Fin. Servs., Inc.* v. *Batarse*, 115 F.3d 644, 648 (9th Cir. 1997)).

## <u>ARGUMENTS</u>

### I.    Defendant's Motion Fails the Rule 11 Safe Harbor Because the Motion Filed Was Not the Motion Served

Rule 11 is not a flexible suggestion. It is a mandatory procedural rule with strict prerequisites. The most basic and essential requirement is that the party seeking sanctions must first serve the exact motion it intends to file, then allow the opposing party twenty-one days to withdraw or correct the allegedly offending material. Only if the paper is not withdrawn or corrected may the identical motion be filed with the Court. This requirement exists to ensure that sanctions are not used as a weapon, but as a last resort after an opportunity to cure. It protects both the Court's time and the integrity of the process by encouraging private correction over public punishment.

Defendant disregarded this requirement entirely. On July 30, 2025, Defendant served Plaintiff with a motion that was seventeen pages long and included 106 pages of attachments.

7

Yet on August 26, 2025, it filed something substantially different. The filed version added a declaration and expanded the exhibits to over 200 pages. It did not merely add formatting or supplemental exhibits. It added five new docket references, six new authorities, and materially expanded its argument. These are not minor changes. The document filed was not a mirror image of the document served. It was a new motion. Even more telling, Defendant did not simply make technical or clerical edits between service and filing. It abandoned the core theory of its served motion. The motion served on Plaintiff accused counsel of citing non-existent and fabricated cases. When Defendant later filed its Rule 11 motion, it retreated from that rhetoric, acknowledging the cases exist and instead reframing the issue as one of AI-fabricated citations or quotation errors. That pivot is not substantially similar. It is a different motion altogether, advancing a different theory of offense. Furthermore, the filed motion alleged fraud and misrepresentation. The law requires twenty-one days to respond to the theory actually filed. Plaintiff was never afforded that chance.

Defendant's own charts illustrate the shift. **(Exhibit A-B)**. In the version served on July 30, 2025, the chart claimed "case does not exist" for each challenged citation. In the version filed with the Court, five of those entries were changed to read "case does not exist as cited." That shift from nonexistence to misquotation is a categorical change. Defendant conceded the cases were real but pivoted to a different theory. That alone confirms these were not substantially similar motions. The safe harbor was never triggered for the motion that now sits on the public docket.

Rule 11's purpose is also inverted by Defendant's conduct. Plaintiff's counsel had already filed a Notice of Errata on August 5, 2025 (Doc. 39) and a Motion for Leave (Doc. 21), which was granted. That replaced citations and clarified authorities. This is exactly the type of corrective action the Rule is designed to encourage. Yet Defendant treated this correction as a new offense, accusing Plaintiff of "doubling down" and engaging in "conscious avoidance." (Doc. 49 at 12). That argument flips the Rule on its head. Rule 11 is designed to reward voluntary correction, not to punish it. Using a good-faith errata as additional fuel for sanctions demonstrates that the motion is not about compliance, but retaliation to further engage in their smear campaign.

The Ninth Circuit has repeatedly held that such deviations are fatal. In *Barber* v. *Miller*, 146 F.3d 707, 710–11 (9th Cir. 1998), the court explained that serving and filing a motion are separate events. The plain language of the rule indicates that the former must occur at least 21 days prior to the latter. Failure to comply with this requirement precludes the imposition of sanctions. The court rejected the idea that any warning short of a pending motion would suffice, stating that it would therefore wrench both the language and purpose of the Rule to permit an informal warning to substitute for service of a motion. That holding has been reinforced time and again. In *Radcliffe* v. *Rainbow Construction Co.*, 254 F.3d 772, 789 (9th Cir. 2001), the Ninth Circuit emphasized that the service requirement is not merely a formality. It serves to give the party against whom the motion is directed an opportunity to withdraw the exact offending pleading and thereby escape sanctions.

Here, Defendant deprived Plaintiff of that opportunity. The motion filed is different in content, different in length, different in attachments, and different in the theory of offense. The safe harbor clock never began to run on the motion that was filed. This is not a procedural technicality, it is a jurisdictional failure and motion must be denied.

## II.    Defendant's Rule 11 Motion Now Accuses Plaintiff Counsel of Deception And Document Fabrication (Document 21)

In its Rule 11 Motion filed with this Court, Defendant casts Doc. 21—the Reply in Support of Motion to Proceed Anonymously—as the centerpiece of its sanctions request, alleging it contained six fabricated case citations in the body and a sixth in the table of authorities. Defendant claims these citations either do not exist, contain falsified courts, dates, or citations, or misrepresent the actual holdings. Building on that, Defendant now escalates its allegations to assert—***for the first time***—that Plaintiff's counsel submitted fabricated documents to this Court, pointing to supposed discrepancies in metadata between draft versions of Doc. 21. Specifically, Defendant also seizes on deeply personal matters, suggesting that counsel's account of the sudden death of her dog was false or manufactured as a litigation tactic. In sum, Defendant accuses Plaintiff's counsel of filing fake cases, fabricating evidence to this Court, providing shifting and implausible explanations, and even inventing personal tragedies, all to advance what they characterize as a pattern of deception.

Defendant attempts to manufacture an issue out of a routine metadata difference between drafts. They point to one version of the reply showing a "created on" date of June 11, 2025, and another reflecting a "created on" date of June 5, 2025, and argue this proves fabrication. The reality is straightforward and fully documented. On June 11, 2025, Mrs. Wright completed and

circulated her own final draft of the Reply to the team. An earlier working draft had been prepared by law clerk, Karen Angulo, but after review, Mrs. Wright prepared her own version and designated it as the final draft to be used.

While Mrs. Wright was out of the office and under immense grief, staff filed the wrong version. Later, when the June 11 draft was downloaded from Dropbox to a mobile device and re-saved so that it could be forwarded for metadata review, the file system generated a new "created on" date. Such changes are the product of ordinary file handling; they do not reflect the actual date of authorship. To remove any doubt, counsel have provided this Court with extensive evidence confirming the authenticity of the June 11 draft. **(Exhibit F, G, H, I, J, R)**.

Defendant's decision to, _**for the first time**_, accuse Plaintiff's counsel of fabricating documents and even personal tragedies based solely on routine metadata differences is improper, unsupported, and itself violative of Rule 11. Rule 11(b) requires that factual contentions presented to the Court have evidentiary support after an inquiry reasonable under the circumstances. Here, Defendant's counsel did not conduct such an inquiry. They made no effort to contact Plaintiff's counsel for clarification before leveling these extraordinary accusations. Instead, they chose to weaponize a routine file-handling discrepancy—fully explained by the June 11, 2025, final draft, corroborating exhibits, and metadata analysis—into a public allegation of fraud.

The Ninth Circuit has made clear that Rule 11 sanctions are governed by an objective reasonableness standard and are to be imposed only when no competent attorney could believe the challenged conduct was well-grounded in fact or law. See _Greenberg v. Sala_, 822 F.2d 882

(9th Cir. 1987). Defendant's choice to equate a re-save date with fabrication, and to publicly

allege falsification of documents and personal events without evidentiary basis, is the very

conduct Rule 11 seeks to deter. As the court held in *Villa v. Heller*, 885 F. Supp. 2d 1042 (S.D.

Cal. 2012), sanctions are inappropriate where counsel has provided reasonable explanations and

corrective measures, while a party's misuse of Rule 11 for tactical advantage is itself

sanctionable.

Accordingly, this Court should reject Defendant's improper accusations as unfounded

and deny its Rule 11 motion in full. Defendant's conduct demonstrates not only a lack of

compliance with Rule 11's procedural safeguards, but also a disregard for its substantive

requirements by advancing allegations unsupported by facts and evidence. Rule 11 is an

extraordinary remedy to be exercised with caution, not a vehicle for reckless and inflammatory

attacks.

## III.    Plaintiff's Counsel Conducted a Reasonable Inquiry Before Filing the Complaint, and the Alleged Error Does Not Warrant Sanctions Under Rule 11 (Document 1)

Federal Rule of Civil Procedure 11(b) imposes a duty on attorneys to ensure that

pleadings are not filed for improper purposes, and that all legal and factual contentions are

supported by existing law or by a nonfrivolous argument for its extension. The Ninth Circuit has

consistently emphasized that Rule 11 is designed to deter baseless filings, not to punish legal

error, factual mistakes, or typographical oversights.

The court in *Zaldivar* v. *City of Los Angeles*, 780 F.2d 823 (9th Cir. 1986), emphasized

that Rule 11 imposes an objective standard of reasonableness on attorneys, requiring them to

ensure that filings are well-grounded in fact and law or represent a good faith argument for the extension, modification, or reversal of existing law. The court clarified that a non-frivolous complaint cannot be deemed to have been filed for an improper purpose, as the improper purpose analysis is unnecessary in such cases. *Greenberg* v. *Sala*, 822 F.2d 882, *Zaldivar* v. *City of L.A.*, 780 F.2d 823 (9th Cir. 1986), *Riverhead Sav. Bank* v. *National Mortg. Equity Corp.*, 893 F.2d 1109.

Although *Zaldivar* was abrogated on certain grounds by the Supreme Court's decision in *Cooter & Gell* v. *Hartmarx Corp.*, 496 U.S. 384 (1990), the Ninth Circuit has continued to reference *Zaldivar* for certain principles, such as the objective reasonableness standard for determining frivolousness under Rule 11 and the requirement that attorney conduct be measured at the time of signing a pleading. In *Zaldivar* v. *City of L.A.*, 780 F.2d 823 (9th Cir. 1986), the Ninth Circuit reversed Rule 11 sanctions imposed after plaintiffs filed a Voting Rights Act claim alleging the city failed to provide bilingual recall petition materials. While the district court found the suit frivolous and harassing, the Ninth Circuit held that Rule 11 uses an objective reasonableness standard—not subjective bad faith. Sanctions are appropriate only when a filing is both legally and factually frivolous after a reasonable inquiry. The court emphasized that dismissal of a complaint does not, by itself, justify sanctions. Here, plaintiffs' legal theory, though ultimately unsuccessful, was based on a plausible statutory interpretation and prior broad readings of the Act. Because their claims were not objectively unreasonable, sanctions were improper.

In *Christian* v. *Matte*l, Inc., 286 F.3d 1118 (9th Cir. 2002), the court emphasized that attorneys must conduct a reasonable factual investigation and legal research to ensure their claims are warranted by existing law or a good faith argument for its extension or modification. Here, Plaintiff's Complaint (Doc. 1) was filed only after a comprehensive factual and legal review conducted by Plaintiff's legal team. As detailed in the Declaration of Mrs. Wright, the firm follows strict internal quality-control protocols requiring multi-person review of all pleadings. Before filing, Plaintiff met with counsel to verify facts and supporting evidence to the best of her knowledge. Law clerk Karen Angulo, who had been with the firm for nearly a year, prepared the initial draft and conducted legal research under the supervision of senior attorneys. Prior to filing, the firm used LexisNexis's Document Analysis Tool to verify the accuracy of all case law citations, which flags misquotations, invalid references, or citation issues. Notably, the quotation and citation now challenged by Defendant were never flagged by the tool. A copy of the LexisNexis Document Analysis Report is being submitted. **(Exhibit K)**. This was not an AI-generated or cut-and-paste filing; the review process was both manual and technology-assisted. The firm also followed internal procedures for version control, metadata tracking, and archival of all drafts through Filevine, as further noted in the Declaration.

According to Karen Angulo, the citation in question—*E.E.O.C.* v. *Maricopa County Cmty. Coll. Dist.*, No. CV-20-01788-PHX-JJT, 2021 WL 3081160—was intended to reference the binding Ninth Circuit decision, E.E.O.C. v. Maricopa County Cmty. Coll. Dist., 736 F.2d 510 (9th Cir. 1984). While the citation formatting was incorrect, the substance of the quotation— a discussion of sex-based wage disparities not justified by merit or seniority—was accurate and

drawn directly from applicable legal standards under the Equal Pay Act and Title VII. Here, like in *Greenberg* v. *Sala*, 822 F.2d 882 (9th Cir. 1987), the court affirmed the denial of appellants' motion for sanctions because although appellees' complaint contained factual errors, the complaint was not frivolous. The court found that appellees and their attorney made a sufficient inquiry before filing the complaint and concluded that the complaint did not contain any significant legal errors.

A. **Plaintiff's Claims Are Well-Grounded In Fact And Law**

Plaintiff's Complaint (Doc. 1), filed on April 29, 2025, contains detailed factual allegations supported by specific events, dates, individuals, and workplace actions. For example, the Complaint describes a pattern of discriminatory treatment and disparate pay between Plaintiff, a high-level Latina marketing executive, and her male counterparts in similar roles. It references the executive misconduct of Kyle Pottinger and outlines specific allegations regarding wage disparity, wrongful termination, and retaliation. The Complaint provides a factual and legal foundation for Plaintiff's Equal Pay Act and § 1981 claims.

The citation issue raised by Defendant—namely, that the case "does not exist"—**is not true**. Although the initial citation to *E.E.O.C.* v. *Maricopa County Cmty. Coll. Dist.* contained an incorrect Westlaw reference and case number, the correct Ninth Circuit authority was transparently identified and promptly substituted in a Notice of Errata (Doc. 40) filed within days of the issue being flagged. The LexisNexis Document Analysis Report, submitted herewith, confirms that no citation issues were flagged in the section at the time of filing. **(Exhibit K)**. This typographical error did not alter the substance of Plaintiff's legal argument nor mislead the

Court regarding the applicable law. It is materially less significant than the procedural and evidentiary deficiencies in cases in which the Ninth Circuit declined to impose sanctions despite filings that lacked admissible evidence or named the wrong defendant. If sanctions were unwarranted in those cases, they are certainly not appropriate here, where the citation was corrected in a facially well-pled complaint supported by factual allegations and matching binding precedent.

The Ninth Circuit has made clear that Rule 11 is not meant to punish typographical errors or honest mistakes, but to deter filings that are objectively frivolous and lack reasonable inquiry. Here, the record reflects that counsel conducted a reasonable pre-filing investigation using research methods commonly employed by attorneys, LexisNexis, reputable legal databases. **(Exhibit K)**.

**IV.    No Fabricated Quotations Were Submitted to This Court**

Defendant's claim that Plaintiff's counsel submitted "fabricated quotations." This is not true. The disputed language arose during the drafting process, which was handled by Plaintiff's former law clerk, Karen Angulo. Ms. Angulo previously confirmed to undersigned counsel Mrs. Wright and Ms. Walters that she did not use ChatGPT or any artificial intelligence tools in preparing the documents at issue. Rather, she relied on traditional legal research methods, including LexisNexis, and secondary sources. Certain passages were mistakenly paraphrased from legal reasoning instead of directly quoted, and early formatting and citation errors gave the unintended appearance of verbatim quotations.

Upon identifying these concerns, counsel took prompt and appropriate corrective action. Following a meeting with Ms. Angulo, the team issued a Notice of Errata (Doc. 40) addressing

16

Documents 1, 20, 26, and 27. The revisions included: (1) clarifying where paraphrased language had been mistakenly marked as direct quotations; (2) substituting accurate authorities where the original sources were misattributed; and (3) withdrawing citations where no verifiable source could be located despite a diligent and good-faith search using LexisNexis.

To further support the reasonableness of counsel's inquiry, Plaintiff submits the LexisNexis Document Analysis Report. **(Exhibit L)**. This report, generated prior to filing, automatically scans for citation errors, misquotations, or invalid references. Notably, none of the disputed quotations or citations raised by Defendant were flagged by the LexisNexis system. **(Exhibit L)**. The report confirms that, at the time of filing, the legal authorities included in the documents and supporting filings appeared valid and appropriately supported. This objective, third-party verification reinforces that Plaintiff's counsel conducted a reasonable inquiry under the circumstances.

For example, with respect to *Ahanchian v. Xenon Pictures, Inc.*, *Briones v. Riviera Hotel & Casino*, *Sibley v. Choice Hotels Int'l, Inc.*, and *Valley Engineers Inc. v. Electrical Engineering Co.*, LexisNexis never flagged the quotation, which is what counsel internally relies on. Nevertheless, the record was promptly revised. These corrections reflect precisely the kind of remedial action envisioned by Rule 11(b)(3) and (c)(2), which allow for revision where an error is discovered after a filing made in good faith.

Defendant now attempts to reframe these corrections as misconduct. But Rule 11 does not demand perfection; it requires a reasonable pre-filing inquiry. That standard was met here. Counsel relied on internal quality controls, fact-checked all pleadings, verified sources using

LexisNexis, and corrected the record promptly upon discovering ambiguity. No red flags for misquotations or citation warnings were triggered during the LexisNexis scan, and the issues were not facially apparent. In addition, Plaintiff's counsel took the extraordinary step of withdrawing citations entirely where no source could be confirmed (e.g., *Pizzo v. City of Chandler*, *McIntyre v. Phoenix Newspapers*) and substituting proper authorities where appropriate. These actions were undertaken with transparency and accountability. **(Exhibit M)**

Again, the Ninth Circuit has made clear that Rule 11 is not meant to punish typographical errors or honest mistakes, but to deter filings that are objectively frivolous and lack reasonable inquiry. Here, the record reflects a reasonable pre-filing investigation, including use of LexisNexis's citation analysis tool and internal team review that just simply missed those deficiencies. It was not purposeful. Furthermore, Rule 11 does not require infallibility, but a reasonable inquiry under the circumstances. Counsel conducted such an inquiry here, using LexisNexis and manual review. No warning flags, alerts, or known inconsistencies were detected at the time of filing.

**IV. Defendant's Case Authorities Are Factually and Legally Distinguishable**

Defendant's reliance on *Mata v. Avianca, Inc.*, *In re Martin*, *Puma v. Walmart Inc.*, and *Doe v. Abbott Laboratories* is both misplaced and misleading. Each of those cases involves conduct materially different from what occurred here. In contrast to the extreme misconduct underlying those rulings, Plaintiff's counsel conducted a good-faith, Lexis-based pre-filing investigation. The record reflects clerical citation errors—not fraud, fabrication, or reckless disregard for truth.

**A. Mata v. Avianca, Inc., 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023)**

In *Mata*, the court-imposed sanctions where attorneys relied solely on ChatGPT to invent case law that did not exist. Even when questioned, plaintiff's counsel provided copies of fake judicial opinions. Doubling down, the fake opinions contained bogus details like incorrect case names and fake citations. The attorneys submitted fabricated opinions and only acknowledged their falsity when prompted by the court. The misconduct involved nonexistent authorities, misrepresentation, and no verification whatsoever.

By contrast, the errors in this case—specifically the citation references to *Pizzo v. City of Chandler* and *McIntyre v. Phoenix Newspapers, Inc.*—were limited to Document 20, a draft prepared by a non-attorney law clerk, Karen Angulo. These cases, upon subsequent investigation, could not be located in the Lexis or Westlaw databases and appear to be erroneous inclusions. However, unlike in *Mata*, no fake judicial opinions were submitted to this Court, nor did Plaintiff's counsel ever represent these as binding authorities with fabricated text or invented holdings.

What occurred here is a human mistake: Plaintiff's counsel, including Ms. Wright, reviewed the draft version of Document 20 on June 5, 2025, and believed all citations had been properly verified. **(Exhibit P-Q)**. This is evidenced by internal tracking documentation and contemporaneous emails in which Ms. Wright expressly stated she had reviewed all citations. **(Exhibit P-Q)**. Unfortunately, despite reasonable diligence and a genuine effort to vet the brief—including running citations through LexisNexis—the erroneous inclusion of the *Pizzo* and *McIntyre* citations was not detected at the time.

Here, by contrast, no fabricated cases were created or submitted to the Court. The citations to *Pizzo v. City of Chandler* and *McIntyre v. Phoenix Newspapers, Inc.* appeared in an early version of Document 20 drafted by a non-attorney law clerk, Karen Angulo. Counsel did not invent those authorities, nor did they rely on generative AI for case generation. Ms. Angulo has expressly affirmed that she did not use ChatGPT or any similar tool to draft her citations, and Plaintiff's counsel had no reason to believe otherwise at the time.

What occurred was a clerical oversight—not a violation of Rule 11. As reflected in contemporaneous internal tracking documents and a June 5, 2025, email, Ms. Wright personally reviewed the citations in the draft document and performed a line-by-line check against the LexisNexis database. That verification process is precisely the kind of reasonable inquiry contemplated by Rule 11(b). While the erroneous citations were regrettably missed during that review, the error was not the product of reckless or bad-faith conduct—it was an honest mistake, rooted in the fallibility of human review.

Indeed, Rule 11 does not require perfection. The Ninth Circuit has consistently held that "Rule 11 is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories," and the standard is reasonableness under the circumstances, not clairvoyance. See *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002). Here, the circumstances involved a review of a draft prepared by a non-lawyer during a period of high workload and staffing limitations. The review included:

- Lexis-based citation cross-checks;

- Manual reading of cited cases (where accessible);

- Metadata-tracked time spent reviewing citations line-by-line;

- Prompt internal discussion regarding edits and content.

Despite these efforts, two erroneous citations slipped through. Upon learning of the discrepancy, Plaintiff's counsel promptly conducted a full post-filing review, corrected the record through a Motion for Leave and Notice of Errata, and disclosed the issue in a transparent and forthright manner.

The case differs markedly from *Mata*, *In re Martin*, and *Puma v. Walmart*, where the filings involved fabricated text, AI-generated fiction, or intentional disregard for verification. Here, there was no AI use, no invented content, no misrepresented holdings, and no concealment. There was a good-faith filing based on real legal research—one that inadvertently included citations that, while facially plausible, turned out not to exist.

Such mistakes, when promptly addressed and corrected, are not sanctionable under Rule 11, which is intended to deter abuses—not penalize honest diligence that falls short of perfection.

**B.   *In re Martin*, 670 B.R. 636 (Bankr. N.D. Ill. 2023)**

In *Martin*, the bankruptcy court strongly admonished the use of AI-based research without human verification, stating, "No lawyer should be using ChatGPT or any other generative AI product to perform research without verifying the results. Period." The court found the attorney had relied on ChatGPT to generate case law and failed to check its accuracy before submission.

21

Here, Plaintiff's legal research was conducted using LexisNexis, and the resulting citations, while imperfect in formatting, pointed to real and citable authorities. The standard under Rule 11 is one of objective reasonableness, not perfection. The record shows an earnest attempt to comply with legal standards—not reckless or unethical conduct.

**B. Plaintiff's Conduct Reflects Reasonableness & Good Faith, Not Misconduct**

Federal Rule of Civil Procedure 11(b) requires that attorneys certify, after an "inquiry reasonable under the circumstances," that any legal contentions are warranted by existing law or a nonfrivolous argument for its extension, modification, or reversal. The purpose is not to impose strict liability for every error, but to deter baseless filings and encourage diligent investigation. As courts have repeatedly emphasized, Rule 11 does not demand perfection. It requires that an attorney make a reasonable inquiry under the factual and temporal circumstances surrounding the filing. The standard is objective, but flexible.

In assessing the pre-filing inquiry required by Fed. R. Civ. P. 11, the court determines whether an attorney, after an objectively reasonable inquiry into the facts and law, would have found the complaint well-founded. The court considers all circumstances, focusing on information available when the paper was filed, including time constraints, subject matter complexity, party familiarity, and ease of access to requisite information. In assessing the pre-filing inquiry required under Rule 11, the court's task is to determine "whether an attorney, after conducting an objectively reasonable inquiry into the facts and law, would have found the complaint to be well-founded." *Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005). The court must consider "all the circumstances of a case," *Cooter*, 496

U.S. at 401, focusing on the information available when the paper is filed. See *Golden Eagle Dist. Corp.* v. *Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986). Courts consider factors including time constraints and deadlines, the complexity of the subject matter and the party's familiarity with it, and the ease of access to the requisite information. See *CQ Int'l Co.* v. *Rochem Int'l, Inc., USA*, 659 F.3d 53, 63 (1st Cir. 2011); *Garr* v. *U.S. Healthcare, Inc.*, 22 F.3d 1274, 1279 (3d Cir. 1994); *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990).

Here, counsel cross-checked the citations using LexisNexis and conducted a line-by-line analysis of the document. Counsel reviewed the document prior to filing and confirmed via contemporaneous emails and tracked comments dated June 5, 2025, that all citations had been checked. However, despite those good faith efforts, the errors were not caught—underscoring a simple but honest human mistake. Furthermore, the final version of Document 21, which was mistakenly filed during a staff coverage lapse, retained the same errors from Document 20. Once brought to counsel's attention, a comprehensive review was conducted and counsel immediately filed a Motion for Leave to Substitute and a Notice of Errata to correct the record transparently and in accordance with ethical obligations. As to Doc. 21, the fact that two citations slipped through this process is evidence of inadvertent clerical oversight—not sanctionable conduct. Additionally, counsel was managing multiple active federal matters involving this same Defendant, including and their bullying tactics should not go unnoticed during this Court's consideration. They have been intentional in every possible way, with many overlapping

23

deadlines and procedural obligations. This context further supports the conclusion that counsel's inquiry was objectively reasonable and conducted in good faith under the circumstances. Accordingly, Rule 11 sanctions are neither warranted nor appropriate.

**V.    Defendant's Shifting Allegations, Procedural Violations, and Inflammatory Filings Underscore a Bad-Faith, Sanctionable Abuse of Rule 11**

Defendant's Rule 11 motion is not grounded in diligent inquiry or a legitimate concern for judicial efficiency—it is a transparent smear campaign riddled with shifting theories, procedural violations, and inflammatory tactics. Initially, Defendant served a motion alleging that Plaintiff's counsel cited non-existent, fabricated cases—claims that were neither qualified nor supported by even minimal verification. Once Plaintiff filed a Notice of Errata and clarified the existence of the cited authorities, Defendant pivoted, abandoning the fabrication claim and instead arguing, for the first time, that the errors suggest unauthorized AI usage, falsification of documents submitted to this Court, and misrepresentation to this tribunal. This reversal reveals a profound lack of diligence. Had Defendant exercised even basic scrutiny before service, it would have discovered that its accusations were false.

Rather than withdraw its claims, Defendant doubled down. It presented a drastically different motion to the Court—expanding from 123 to 220 pages, injecting new arguments, and attaching inflammatory and irrelevant exhibits, including unrelated disciplinary records and private emails. This blatant deviation from the safe-harbor procedure mandated by Rule 11(c)(2) renders the motion procedurally defective and inherently prejudicial. As the Ninth Circuit emphasized in *Radcliffe* v. *Rainbow Constr.* Co., 254 F.3d 772, 789 (9th Cir. 2001), a Rule 11 motion must be identical in service and filing. *Barber* v. *Miller*, 146 F.3d 707, 710–11 (9th Cir.

1998), similarly instructs that inserting sanctions rhetoric into public filings before safe-harbor expiration is itself a Rule 11 violation.

Defendant's approach reflects not good-faith advocacy but bad-faith gamesmanship. By inserting scandalous materials—such as past bar complaints entirely unrelated to this case—and weaponizing Plaintiff's good-faith efforts to correct citation issues, Defendant reveals its true goal: to malign opposing counsel. Exhibits 1–9 are not tied to the legal merits of this Rule 11 inquiry; they are character attacks designed to inflame. That is not what Rule 11 allows.

Even more troubling is Defendant's glaring hypocrisy. While speculating—without proof—that Plaintiff used AI, it was Defendant's own counsel who relied on ChatGPT as authoritative evidence during a recorded proceeding in a separate case, reading AI-generated demographic data into the record. Yet here, Defendant seeks sanctions based on its own speculative assumptions, not facts. If the standard Defendant proposes were applied evenly, its own counsel would be the one facing sanctions.

Defendant has failed to meet the procedural prerequisites and substantive standards required under Rule 11 and applicable law. Its shifting arguments, improper filing tactics, irrelevant and prejudicial exhibits, and hypocrisy reveal the motion for what it truly is: an attempt to harass, not a genuine invocation of the Rule 11 process.

## VI.    Defendant's Alternative Sanctions Theories Also Fail

Defendant gestures at 28 U.S.C. § 1927 and inherent authority. Both require clear and convincing proof of bad faith. *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219–22 (9th Cir. 2010); *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001). Nothing in this record approaches that standard. A district court has "broad, but not limitless" power to impose

sanctions in appropriate cases. *Mendez* v. *County of San Bernardino*, 540 F.3d 1109, 1131 (9th Cir. 2008). When sanctions are sought under the court's inherent powers, a finding of "bad faith" is required, which "sets a high threshold." *Id.* at 1132 (internal quotes and cites omitted). In fact, "[e]ven in a case where the district court described a litigant's arguments as 'totally frivolous,' 'outrageous' and 'inexcusable' and called his behavior 'appall[ing],' [the Ninth Circuit] nonetheless refused to equate this characterization of conduct as synonymous with a finding of bad faith." Id. (quoting *Primus Auto. Fin. Servs., Inc.* v. *Batarse*, 115 F.3d 644, 648 (9th Cir. 1997)). Nothing here shows that Plaintiff's counsel acted in bad faith.

## VII.    Fee Shifting Is Appropriate

Finally, Rule 11(c)(2) authorizes the Court to award the reasonable expenses incurred in opposing an unwarranted sanctions motion. Plaintiff has been forced to expend significant time and resources responding to Defendant's procedurally defective, and abusive filing. An award of fees is not only authorized but necessary to deter this misuse of Rule 11 and to discourage similar misconduct in the future.

## CONCLUSION

Accordingly, Plaintiff asks this Court to deny the Motion for Sanctions in its entirety and to find that Defendant's conduct itself constitutes sanctionable abuse of Rule 11.

**EXECUTED** this 5th day of September 2025.

Respectfully Submitted,

**IBF LAW GROUP, PLLC**

By: */s/ Sheree D. Wright*
3101 N. Central Ave, Suite 1250
Phoenix, Arizona 85012
Telephone: (602) 833-1110
Facsimile: (602) 800-5701
e-Mail: sheree@ibflaw.com

**THE LAW OFFICE OF
CORTNEY E. WALTERS, PLLC**

Cortney E. Walters
By: */s/ Cortney E. Walters*
2719 Hollywood Blvd., Suite A-1969
Hollywood, FL 33020
Telephone: (954) 874-8022
Facsimile: (954) 889-3747
cwalters@cewlawoffice.com

*Attorneys for Plaintiff(s)*