Malcolm A. Heinicke* (CA Bar No. 194174)
Taylor L. Benninger* (CA Bar No. 344825)
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:    (415) 512-4000
Malcolm.Heinicke@mto.com
Taylor.Benninger@mto.com

Craig Jennings Lavoie* (CA Bar No. 293079)
Jennifer L. Bryant* (CA Bar No. 293371)
Jin Niu* (CA Bar No. 362447)
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:    (213) 683-9100
Craig.Lavoie@mto.com
Jennifer.Bryant@mto.com
Jin.Niu@mto.com

Leah S. Freed (State Bar No. 021332)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Esplanade Center III, Suite 800
2415 East Camelback Road
Phoenix, AZ 85016
Telephone:    (602) 778-3700
Leah.Freed@ogletree.com

Attorneys for Defendant
Suns Legacy Partners, L.L.C.
* Admitted *pro hac vice*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Chelsea Montes,<br><br>        Plaintiff,<br><br>    vs.<br><br>Suns Legacy Partners, L.L.C.,<br><br>        Defendant. | No. CV-25-01295-PHX-GMS<br><br>**DEFENDANT SUNS LEGACY PARTNERS, L.L.C.'S REPLY MEMORANDUM IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES FOLLOWING SANCTIONS ORDER** |

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ......................................... 1

II.     ARGUMENT ........................................................................................................ 3

        A.      Defendant's Hourly Rates Are Reasonable, as Plaintiff Concedes. ................ 3

        B.      Defendant Reasonably Spent 148 Hours of Attorney Time to Respond
                to Plaintiff's Counsel's Sanctionable Conduct. ................................................. 4

        C.      Defendant's Fee Request Complies with the Scope of the Court's
                Sanctions Order. ................................................................................................ 5

        D.      Defendant's Attorney's Hours Were Not Improperly Duplicative. ................ 6

        E.      Defendant's Fee Request Includes Only Attorney-Level Tasks. .................... 8

        F.      Plaintiff's Requested 75–90% Reduction Lacks Any Support. ..................... 9

III.    CONCLUSION ................................................................................................. 11

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Byoplanet Int'l, LLC v. Johansson*,
No. 0:25-cv-60630, 2025 WL 3091094 (S.D. Fla. Aug. 1, 2025) ..................... 2, 4, 5, 10

*Caggiano v. Comm'r of Soc. Sec. Admin.*,
No. CV-19-05522-PHX-MTL, 2021 WL 2779499 (D. Ariz. July 2, 2021).................... 7

*Couvrette v. Wisnovsky*,
No. 1:21-cv-00157-CL, 2025 WL 4109655 (D. Or. Dec. 12, 2025) ....................... 1, 2, 4

*Democratic Party of Wash. State v. Reed*,
388 F.3d 1281 (9th Cir. 2004) ...................................................................................... 7

*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (2017) ...................................................................................................... 5

*In re Itel Sec. Litig.*,
596 F. Supp. 226 (N.D. Cal. 1984) ............................................................................... 7

*Maske v. Comm'r of Soc. Sec. Admin.*,
No. CV-18-04891-PHX-DWL, 2020 WL 6562343 (D. Ariz. Nov. 9,
2020) ............................................................................................................................. 7

*Monge v. DH Brewing Inc.*,
No. CV-24-01294-PHX-MTL, 2025 WL 3891029 (D. Ariz. July 30,
2025) ............................................................................................................................. 8

*Morales v. City of San Rafael*,
96 F.3d 359 (9th Cir. 1996)........................................................................................... 1

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008)............................................................................... 2, 6, 9

*Nadarajah v. Holder*,
569 F.3d 906 (9th Cir. 2009).......................................................................................... 8

*Park v. Kim*,
91 F.4th 610 (2d Cir. 2024)............................................................................................ 9

*USI Ins. Servs., LLC v. Wright*,
No. 4:23-CV-01070-YGR, 2024 WL 1382460 (N.D. Cal. Apr. 1, 2024) ...................... 5

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff's opposition does not and cannot dispute that the lodestar method applies to Defendant's fee request and that a properly calculated lodestar is presumed to be reasonable. *See, e.g.*, *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996).  Nor does Plaintiff advance any argument that the rates of Defendant's attorneys are unreasonable. Instead, Plaintiff contests only the reasonableness of the number of hours included in Defendant's calculation.  But contrary to Plaintiff's arguments, Defendant's fee motion seeks to recover only the time its attorneys reasonably spent "in discovering the non-existent citations and quotations and briefing the Rule 11 motion for sanctions."  Doc. 73 at 35.

Strikingly similar caselaw confirms that Defendant's request for fees for 148 hours of attorney time is reasonable.  In *Couvrette v. Wisnovsky*, counsel for plaintiffs cited fifteen fake cases and eight fake quotations across three filings and were not "adequately forthcoming, candid, or apologetic about their conduct."  No. 1:21-cv-00157-CL, 2025 WL 4109655, at *1 (D. Or. Dec. 12, 2025).  The court awarded defendants' fees for, among other things, 139 hours of attorney and paralegal work during sanctions proceedings.  *Id*. at *15.[1] In doing so, the court noted that, in the "universe of cases involving sanctions for the misuse of artificial intelligence, this case is a notorious outlier in both degree and volume."  *Id*. at *1.  So too here:  Plaintiff's counsel included "at least 18 instances" of fake citations and quotations across four filings and, instead of taking responsibility, "present[ed] a convoluted tale about the inclusion" of those citations.  Doc. 73 at 26, 32.  It was reasonable for Defendant to spend the time to confirm the nonexistence of Plaintiff's cited cases and accurately brief this issue to the Court—particularly given the need to untangle the

---

[1] *See also* Defendants' Amended Bill of Costs and Reasonable Attorney Fees at 3, *Couvrette*, No. 1:21-cv-00157-CL, Doc. 223 (summarizing billing records for sanctions proceedings); *Couvrette*, No. 1:21-cv-00157-CL, slip op. at 9–10 (D. Or. Mar. 23, 2026), Doc. 225 (awarding attorneys' fees).

"convoluted tale" Plaintiff's counsel spun as they persistently refused to acknowledge the misconduct. *Id.* at 32.[2]

Plaintiff's other arguments are unavailing. Plaintiff complains that Defendant's hours were improperly duplicative, but she does not identify any billing entries for "unnecessarily duplicative" work. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). And although Plaintiff asserts that the involvement of two law firms—O'Melveny & Myers LLP ("OMM") and Munger, Tolles & Olson LLP ("MTO")—"inflated" Defendant's fee request (Doc. 80 at 9), the billing records show the opposite: These firms worked on this matter sequentially, not simultaneously, and Defendant carefully excluded any duplication from its request.

Nor do Defendant's billing records improperly include clerical tasks, as Plaintiff suggests. *See id.* at 11. Plaintiff's opposition fails to identify even a single billing entry that includes a clerical task. There are none. And Plaintiff's (ironic, if not alarming) suggestion that "confirming citations" is a clerical task that "should not be billed at attorney rates," *id.* at 11, ignores the Court's sanctions order, which instructed Defendant to include time it spent to "discover[] [Plaintiff's] non-existent citations" (Doc. 73 at 35). Moreover, confirming the accuracy of citations is not mere clerical work: As the Court's order makes clear, it is the duty of attorneys to "actually check the cases and citations contained in" their filings. *Id.* at 31.

Finally, Plaintiff's proposal to reduce Defendant's fee request by "at least 75 to 90 percent" (Doc. 80 at 13) lacks any support. The Ninth Circuit in *Moreno* explained that a "district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." 534 F.3d at 1112.

---

[2] Indeed, it is ironic for Plaintiff and her counsel to now characterize Defendant's investigation as overly diligent when they previously accused Defendant of a "lack of diligence in their own legal research." Elaine Briseño, *NBA's Suns Seek Sanctions Over Alleged Fake Case Citations*, Law360 (Aug. 26, 2025), https://www.law360.com/articles/2381272/nba-s-suns-seek-sanctions-over-alleged-fake-case-citations.

DEFENDANT'S REPLY IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES

But Plaintiff fails to cite a case that would justify a 75% to 90% across-the-board cut. To the contrary, other courts have awarded attorneys' fees of a comparable size for similar misconduct, underscoring the reasonableness of Defendant's calculation. *See, e.g.*, *Couvrette*, No. 1:21-cv-00157-CL, slip op. at 9–10 (D. Or. Mar. 23, 2026), Doc. 225 (awarding $94,704.38 in attorneys' fees); *Byoplanet Int'l, LLC v. Johansson*, No. 0:25-cv-60630, 2025 WL 3091094, at *4 (S.D. Fla. Aug. 1, 2025) (awarding $85,567.75 in attorneys' fees).

For these reasons, Defendant respectfully submits that it reasonably incurred at least $144,390.18 in attorneys' fees. *See* Doc. 77 at 3. Defendant defers to the Court on the appropriate fee award.

## II.     ARGUMENT

### A.     Defendant's Hourly Rates Are Reasonable, as Plaintiff Concedes.

Defendant's fee motion established that its attorneys' hourly rates—ranging from $1,675 to $1,420 per hour for partner time, and $985 to $851 per hour for associate time—are reasonable and consistent with the market rates for attorneys of comparable skill and experience. *See* Doc. 77 at 3, 5–6. Plaintiff does not argue otherwise. Although her opposition notes that Defendant's billing rates "rang[ed] from approximately $1,400 to $1,675 per hour for partner-level work" (Doc. 80 at 8), she does not contest the appropriateness of those rates given the individual attorneys' backgrounds and levels of experience.[3] Nor does Plaintiff advance any argument for this Court to deviate from cases approving the rates charged by attorneys at OMM and MTO in other matters. *See* Doc. 77 at 6 (collecting cases); Doc. 77-1, ¶¶ 16–17, 23 (same). As such, Defendant respectfully submits that the requested hourly rates are reasonable.

---

[3] To the extent that Plaintiff contends that Defendant billed "nearly 150 hours of high-level attorney time" at *partner* rates (Doc. 80 at 8), she is simply wrong: Defendant's billing records reflect that associates performed the bulk of the work (nearly 100 hours, or about 67%), with partners billing just over 48 hours, largely for supervisory review, revisions, and strategic guidance. *See* Doc. 77-1, ¶¶ 12, 19, Tables I & II. This is consistent with the conventional law firm staffing model.

**B.    Defendant Reasonably Spent 148 Hours of Attorney Time to Respond to Plaintiff's Counsel's Sanctionable Conduct.**

The thrust of Plaintiff's opposition to the requested fee award is that the total amount of Defendant's attorney hours is "excessive on its face." Doc. 80 at 7. That is wrong. Defendant reasonably spent 148 attorney hours on the tasks necessary to respond to Plaintiff's counsel's misconduct, namely: (1) uncovering Plaintiff's fake citations and quotations, (2) researching the law and procedure related to hallucinated citations and Rule 11 motions, (3) preparing its Rule 11 motion, (4) revising that motion when Plaintiff's counsel failed to adequately cure their violations during the safe-harbor period, and (5) researching and preparing its reply in support of its sanctions motion.

Similar cases confirm that Defendant's counsel spent a reasonable number of hours addressing the AI misuse here. In *Couvrette*, the court sanctioned plaintiffs' counsel for submitting "fifteen non-existent cases and eight fabricated quotations" and imposed a variety of sanctions, including terminating sanctions, a $15,500 fine, and "reasonable attorney's fees . . . directly resulting from Plaintiffs' and their attorneys' violations of the Federal and Local Rules." 2025 WL 4109655 at *13, *15–16. The defendants requested compensation for the 129.5 attorney hours and 9.5 paralegal/legal assistant hours they spent on "work performed during the sanctions proceedings," as well the equivalent of 53 hours spent addressing "Plaintiffs' use of fabricated law . . . in the summary judgment briefing." Defendants' Amended Bill of Costs and Reasonable Attorney Fees at 3–4, *Couvrette*, No. 1:21-cv-00157-CL, Doc. 223. The court found that these hours were reasonable and ordered plaintiff's counsel to pay the associated $94,704.38 in fees. *Couvrette*, No. 1:21-cv-00157-CL, slip op. at 9–10 (D. Or. Mar. 23, 2026), Doc. 225.

Similarly, in *Byoplanet*, the court sanctioned the plaintiffs' attorney for repeatedly "mak[ing] submissions to the Court using AI without checking the veracity of cases" and improperly "rely[ing] on a paralegal to draft a filing." 792 F. Supp. 3d 1341, 1354–55 (S.D. Fla. 2025). Defense counsel spent just under 150 billable hours across three consolidated

DEFENDANT'S REPLY IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES

cases responding to the filings containing fake citations,[4] and the court saw "no reason to find Defendants' hours . . . unreasonable." *Byoplanet*, 2025 WL 3091094, at *3.

The hours that Defendant's attorneys spent to uncover and respond to Plaintiff's counsel's AI misuse are on par with the hours that the attorneys in *Couvrette* and *Byoplanet* spent in response to similar misconduct. In those cases, the courts found that the defendants' attorneys expended a reasonable amount of hours. The same is true here: Defendant's attorneys reasonably spent 148 hours to "discover[] the non-existent citations and quotations and brief[] the Rule 11 motion for sanctions." Doc. 73 at 35.

### C.    Defendant's Fee Request Complies with the Scope of the Court's Sanctions Order.

Relatedly, Plaintiff contends that Defendant's fee request goes beyond "the specific conduct that gave rise to the sanction" and impermissibly "seeks recovery for work related to 'follow-on submissions' or ongoing disputes." Doc. 80 at 10. This contention is equally meritless. Plaintiff cites *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 101 (2017), for the proposition that a Rule 11 sanctions award should not include "recovery for subsequent litigation activity or continued efforts to expand or revisit the issue." Doc. 80 at 10. But that is not *Goodyear*'s holding.[5] *Goodyear* establishes the but-for causation rule that limits recoverable attorneys' fees to those incurred "solely because of the misconduct." 581 U.S. at 104. Nothing in *Goodyear* speaks to recovery for efforts by a party to "expand or revisit" the underlying Rule 11 issue. Doc. 80 at 10.

---

[4] In two of the consolidated cases, defense counsel spent "121.7 hours of billable work responding to the relevant filings." *Byoplanet*, 2025 WL 3091094, at *1. The order granting attorneys' fees does not specifically state the number of hours defense counsel worked in the third case, but a review of the underlying fee notice shows that counsel billed an additional 26.9 hours to that case. *See* Defendant's Notice Regarding Disputed Fee Amounts, Exh. A at 4–5, *Byoplanet*, No. 0:25-cv-60647, Doc. 36-1 (itemizing hours that collectively add up to 26.9).

[5] Plaintiff also cites to the syllabus of *Goodyear*, "which is not part of the Supreme Court's opinion" and cannot be cited as authority. *USI Ins. Servs., LLC v. Wright*, No. 4:23-CV-01070-YGR, 2024 WL 1382460, at *3 (N.D. Cal. Apr. 1, 2024).

DEFENDANT'S REPLY IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES

Even if *Goodyear* did support Plaintiff's position, the facts certainly do not. Defendant's calculation includes only entries that would not have been billed in this matter but for the misconduct of Plaintiff's counsel:  citing hallucinated AI cases, quoting non-existent law, and then failing to take responsibility and falsely characterizing these actions as formatting or clerical errors.  *See* Doc. 73 at 26, 30–31, 33.  A survey of defense counsel's billing entries illustrate this point:

- "Analyze and investigate apparent hallucination cases cited by Plaintiff."  Doc. 77-4 at 3.

- "Analyze reply brief filed by Plaintiff containing seeming invented quotations . . . ."  *Id.* at 4.

- "Research AI hallucination sanctions cases."  Doc. 77-2 at 4.

- "Analyze pertinent precedent and review/revise draft motion for sanctions for opposing counsel's improper use of artificial intelligence in court submission."  *Id.* at 6.

- "Review August 5 corrective filing by S. Wright and analyze whether Rule 11 violations have been cured."  *Id.* at 13.

None of these entries involves tasks that would have been required in the absence of counsel's misconduct.  Moreover, to account for the portion of the Rule 11 proceedings that did not relate to the non-existent citations and quotations, Defendant conservatively applied a 15% discount to its total fee request.  *See* Doc. 77-1, ¶ 9.  This ensures that nothing in Defendant's request falls outside the scope of the Court's order.

### D.    Defendant's Attorney's Hours Were Not Improperly Duplicative.

Plaintiff next argues that reductions in Defendant's fee request "are appropriate" because Defendant's "billing records reflect over lawyering or disproportionate effort relative to the task performed."  Doc. 80 at 8 (citing *Moreno*, 534 F.3d at 1112).  This argument, too, is unavailing.

As a threshold matter, Plaintiff misrepresents *Moreno*.  Far from finding fee reductions appropriate in that case, the Ninth Circuit in *Moreno* vacated the district court's across-the-board fee reduction to account for allegedly "excessive" and "duplicative" work.  534 F.3d at 1116.  The Ninth Circuit underscored that litigation inherently involves "*some*

degree of duplication" and confirmed that "necessary duplication . . . cannot be a legitimate basis for a fee reduction." *Id.* at 1112–13. Courts have accordingly acknowledged that "multiple attorneys can bill for work on the same case" because "legal collaboration often requires multiple attorneys to review the same documents in order to contribute meaningfully to the drafting and editing process." *Caggiano v. Comm'r of Soc. Sec. Admin.*, No. CV-19-05522-PHX-MTL, 2021 WL 2779499, at \*5 (D. Ariz. July 2, 2021) (citation omitted); *see also Maske v. Comm'r of Soc. Sec. Admin.*, No. CV-18-04891-PHX-DWL, 2020 WL 6562343, at \*6 (D. Ariz. Nov. 9, 2020) (same).[6]

Here, to the extent that Defendant's billing records reflect any duplication—and Plaintiff does not actually identify the billing records she claims are duplicative—such duplication was necessary under the circumstances of this case. *See Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286–87 (9th Cir. 2004) (cited by Plaintiff, *see* Doc. 80 at 9) ("Courts must exercise judgment and discretion, considering the circumstances of the individual case, to decide whether there was unnecessary duplication."). Considering the scope of the misconduct (at least eighteen fake citations and quotations across four filings), Plaintiff's counsel's repeated attempts to obfuscate the issue, and the sensitivity and novelty of AI-hallucinated citations and quotations, it was reasonable to have multiple attorneys contribute their skills, knowledge, and professional judgment to the preparation of Defendant's briefs. In other words, the "repeated revisions" and "multiple layers of review" about which Plaintiff complains (*see* Doc. 80 at 7) reflect reasonable staffing decisions under the circumstances, not needless duplication.

---

[6] Plaintiff also cites *In re Itel Securities Litigation*, 596 F. Supp. 226 (N.D. Cal. 1984) for the proposition that a Rule 11 sanctions award "does not authorize recovery for inefficiencies, duplication of effort, or work that extends beyond the limited task for which sanctions were imposed." Doc. 80 at 4. But *In re Itel* says nothing about "inefficiencies," "duplication," or limiting fee awards to tasks "for which sanctions were imposed." Rather, the court simply reduced the fee requests as "far out of proportion to the size of the wrong perpetrated," without any discussion of duplication. 596 F. Supp. at 234.

Plaintiff's argument that the involvement of two major law firms (OMM and MTO) resulted in "inefficiencies" and "duplication," *id.* at 9, also fails on the facts. Although OMM and MTO briefly overlapped as counsel of record for Defendant, their work on the sanctions issue was sequential, not simultaneous. The fee request thus addresses any potential duplication by seeking OMM's fees and MTO's fees for separate, non-overlapping time periods. Specifically, Defendant's fee request seeks OMM fees from June 2025 only (approximately 9.5 hours, or about 6% of the total), and then MTO fees from July through September 2025 only. *See* Docs. 77-2, 77-4. Moreover, Defendant has not requested fees for all the lawyers involved. Instead, it has sought fees for only those lawyers principally involved in discovering the false citations and then preparing the Rule 11 motion during the periods before and after the change in counsel: one partner and one associate from OMM (the initial effort), and then three partners and one associate at MTO (the secondary effort and preparation of the motion). Finally, Defendant's fee request does not include any entries for tasks like "becom[ing] familiar with the record" or "review[ing] prior work," which mitigates Plaintiff's concerns about the "inefficiencies" caused by Defendant's change in counsel. Doc. 80 at 9.

### E.    Defendant's Fee Request Includes Only Attorney-Level Tasks.

Plaintiff next asserts that Defendant improperly included clerical or administrative tasks in its fee request, but again, Plaintiff is wrong on the facts.

To be clear: Defendant does not seek compensation for clerical or administrative tasks, much less at attorney rates. Tellingly, Plaintiff has not identified a single billing entry that is allegedly clerical or administrative. And there are no such entries. Defendant has already excluded all paralegal time, as well as any tasks that courts ordinarily regard as "clerical," from its fee request. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (defining clerical tasks to include "filing, transcript, and document organization"); *see also Monge v. DH Brewing Inc.*, No. CV-24-01294-PHX-MTL, 2025 WL 3891029, at *2–3 (D. Ariz. July 30, 2025) (identifying clerical tasks as "creat[ing] file," "compil[ing] case documents," "fil[ing] service executed," and "review[ing] mail undeliverable," among

others (alterations edited)).  Plaintiff does not and cannot point to any evidence to the contrary.

Plaintiff's suggestion that "confirming citations" is a "clerical or administrative task[]" that "should not be billed at attorney rates" (Doc. 80 at 11), is also incorrect and, given the conduct her counsel was sanctioned for, ironic if not alarming.  To the extent Plaintiff objects to the time Defendant spent confirming *Plaintiff's* citations, she has no grounds for that objection, as the Court's sanctions order instructed Defendant to include in its fee request "reasonable attorneys' fees incurred in discovering the non-existent citations." Doc. 73 at 35.  To the extent Plaintiff objects to the time Defendant spent confirming *its own* citations, very little of that time (less than two hours) was included in Defendant's billing entries.[7]  More broadly, though, Plaintiff's suggestion that "confirming citations" is not an attorney-level task flies in the face of this Court's finding that it is ultimately *counsel's* responsibility "to actually check the cases and citations" in filings.  Doc. 73 at 31.  Courts across the country agree that "the duties imposed by Rule 11 require that *attorneys* read, and thereby confirm the existence and validity of, the legal authorities on which they rely." *Park v. Kim*, 91 F.4th 610, 615 (2d Cir. 2024) (emphasis added).  It is plainly permissible for attorneys to bill such non-delegable tasks at attorney rates.

**F.     Plaintiff's Requested 75–90% Reduction Lacks Any Support.**

Finally, Plaintiff's request that the Court apply "a significant reduction" to Defendant's fee request "on the order of at least 75 to 90 percent" (Doc. 80 at 13) has no basis in the law or the facts.  *Moreno* illustrates as much.  In that case, the Ninth Circuit confirmed that district courts have discretion to apply a modest "haircut" of no more than 10% without specific explanation.  534 F.3d at 1112.  But the Circuit vacated a fee award that imposed larger reductions, ranging from 25–50%, without a specific explanation.  *See*

---

[7] Only one of Defendant's billing entries relates to cite-checking its own motion: a July 30 entry to "[r]eview and incorporate cite check edits."  Doc. 77-2 at 9.  The bulk of Defendant's cite check was conducted by other attorneys whose billing entries were excluded from Defendant's calculations.

*id.* at 1112, 1116.  Thus, *Moreno* instructs that any substantial reduction must be accompanied by a specific justification.  Plaintiff, however, offers no specific reasoning to justify her proposed 75–90% reduction, effectively admitting that it is unwarranted.  *See id.* at 1116 ("If opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, [the court] should normally grant the award in full, or with no more than a haircut.").

This conclusion is bolstered by the fact that courts have declined to impose similar fee reductions in other cases involving egregious AI misuse.  In *Byoplanet*, the sanctioned attorney proposed reducing a portion of defendants' attorneys' fees by up to 76%.  *See* 2025 WL 3091094, at *2.  The court was unpersuaded, noting that the sanctioned attorney had "offered no argument on this issue beyond the bare assertion that Defendants' fees are 'duplicative, excessive, or administrative.'"  *Id.* at *3 (citation omitted).  Instead, the court found that the defendant's proposed fee award (which included "a 15% discount against [one defendant's] total asserted fees") was reasonable.  *Id*.  Ultimately, the court imposed a total fee award of more than $85,000, which it found appropriate because "the *severity* of [counsel's] conduct [was] far more egregious when compared to other cases in which lesser sanctions were imposed."  *Id.* at *4 (emphasis in original); *see also id.* (distinguishing a case involving a $31,100 attorneys' fee award where the misuse of AI occurred in "a single supplemental brief in a single case").

The Court should reject the drastic reduction that Plaintiff proposes for the same reasons.  Here, as in *Byoplanet*, Plaintiff's only arguments for a larger reduction are conclusory assertions that Defendant's fees are "duplicative, excessive, or administrative," *id.* at *3 (citation omitted), which lack any support in Defendant's billing records.  And here, as in *Byoplanet*, Plaintiff's conduct was "far more egregious when compared to other cases in which lesser sanctions were imposed."  *Id.* at *4.  Plaintiff's counsel cited at least eighteen fictitious cases and quotations in four separate filings and then invented "a convoluted tale" to evade responsibility (Doc. 73 at 26, 32–33)—and has continued to evade responsibility even after this Court's sanctions order.  *See, e.g.*, Doc. 74 ("notice" by Ms. Wright regarding

-10-

"counsel's availability, access to materials, and level of involvement during the relevant time period" when the AI misuse occurred). If ever a case involving the misuse of generative AI justified a substantial fee award, it is this case.

## III.    CONCLUSION

For the foregoing reasons, Defendant respectfully submits that it reasonably spent at least 148 hours to discover Plaintiff's misconduct and to brief the corresponding Rule 11 motion for sanctions. With the 15% discount to account for any work that may have fallen outside of the Court's sanctions order, those 148 hours represent $144,390.18 in attorneys' fees. Defendant respectfully requests that the Court award Defendant the attorneys' fees it reasonably incurred "in discovering the non-existent citations and quotations and briefing the Rule 11 motion for sanctions." Doc. 73 at 35.

DATED:  May 5, 2026                            MUNGER, TOLLES & OLSON LLP


By:  */s/ Malcolm A. Heinicke*
Malcolm A. Heinicke (*pro hac vice*)
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907

Attorneys for Defendant
Suns Legacy Partners, L.L.C.